[No. 17370. . Department One. January 16, 1923.]

R. E. DOWNIE, *Respondent*, v. SNOW CREEK LOGGING COMPANY, *Appellant*.[1]

LOGS AND LOGGING (3)—CARRIERS (16)—CONTRACT FOR HAULING LOGS—LIABILITY. Where defendant, a logging company, sold on a stumpage basis standing timber to a manufacturer of poles, and agreed to haul out the poles over its logging road, but refused, for some reason, to haul out poles that were cut and delivered at the right of way, and which had been sold by the manufacturer to the plaintiff, an agreement thereafter arrived at between the three parties whereby plaintiff agreed to pay the defendant the' cost of transporting the logs, and also the stumpage and other money due defendant from manufacturer, out of moneys due from plaintiff on the purchase price, was but a modification of the stumpage contract, made for the benefit of the manufacturer and gave plaintiff no right of action against defendant on its breach by refusing to transport the logs; plaintiff's remedy being against the manufacturer, and the manufacturer's remedy being against the defendant.

Appeal from a judgment of the superior court for King county, Smith, J., entered April 1, 1922, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*Shorett, McLaren & Shorett* and *Edward R. Taylor,* for appellant.

*William E. Froude* and *John A. Homer,* for respondent.

PER CURIAM.—This is an appeal from a money judgment based upon the verdict of a jury.

There was testimony from which the jury might have concluded as follows: That the respondent, a resident of Seattle, is a buyer and seller of cedar poles, and the appellant is the owner of tracts of timber located in the Olympic peninsula; that Rogers Brothers

[1]Reported in 212 Pac. 155.

were manufacturing poles in the woods and bringing them to market; that on the 13th of December, 1919, the respondent and Rogers Brothers had some oral agreement with reference to getting out poles to be purchased by the respondent, and which agreement was, at least in part, reduced to writing in the form of a letter, signed by the respondent and dated December 13, reading in part as follows:

"I will take from you during the year 1920, 5,000 cedar poles, to be loaded on the railroad near Port Townsend, Wash., at the following prices:—poles to be square top and butt taper should be 1″ to 10 ft. . . . (here follows a list of the prices to be paid). Should you decide to put these poles in the salt water, the price will be one cent less per foot . . . When poles are alongside track you are entitled to 50% advance, the remaining 50% to protect stumpage and loading."

Very shortly after the writing of this letter, Rogers Brothers made arrangements with the appellant to cut cedar poles on its lands, agreeing to pay stumpage therefor, and that appellant should haul such poles over its logging road, which was then in course of construction, and place them on a siding of the Chicago, Milwaukee & St. Paul Railway Company's spur with which appellant's road was to connect, but such hauling was to be done only on cars provided by Rogers Brothers, and only such poles were to be handled as were loaded and made ready to be moved before appellant's logging operations in the vicinity of the location of the poles had commenced. It was contemplated the logging railroad would be ready for hauling the poles about June, 1920, and that logging operations would be commenced not long thereafter. By the time the railroad was constructed, Rogers Brothers had cut and brought to the railroad right of way many cedar

poles for the purpose of turning them over to the respondent, under the terms of his letter to them. By this time respondent had advanced to Rogers Brothers $2,279.92 on the purchase price. It appears, however, that, for one reason or another, none of these poles was loaded or hauled out before appellant had commenced its logging operations in the vicinity of where the poles were. It also appears that some difficulty arose on this account concerning the transportation of poles, and there was a question whether the appellant would remove them.

In this condition of affairs, the respondent and one of the Rogers brothers visited the president of the appellant at his office in Seattle during July and September, when the matter was discussed and arrangements were made whereby the appellant would haul over its road and deliver to the Milwaukee spur the poles in question, provided they were loaded on cars within a reasonable time, and the respondent was to pay appellant the cost of transporting the logs and also the stumpage which Rogers Brothers had agreed to pay, and also a sum which Rogers Brothers owed to the appellant on account of feed and other articles obtained; these payments to be made by the respondent out of moneys which he would owe to Rogers Brothers under his contract with them. Shortly after the September conferences, Rogers Brothers obtained three empty cars which they asked the appellant to take to the place where the poles were located in order that they might be loaded and removed. The appellant refused to handle these cars, or any others which might thereafter be presented. Thereafter the respondent brought this action for damages, based on the July and September conferences concerning the handling of the poles.

There are many assignments of error, but we think there is one which is controlling, and that is, that the testimony shows that the respondent did not have any contract with the appellant upon which he could maintain this action. Whatever contract was made, at the July and September conferences between the parties, was with, and for the benefit of, Rogers Brothers and not this respondent. Under the terms of the contract between respondent and Rogers Brothers the latter were to load the poles on cars. Rogers Brothers had not succeeded in so doing before the appellant had commenced its logging operations in the vicinity of the poles, and the contract entered into at the July and September conferences concerning the transportation of these poles by the appellant was merely a modification of the original contract between appellant and Rogers Brothers concerning this matter. Whatever respondent did in this connection was on behalf of Rogers Brothers. It is with them that he had his original contract. It was they who were to deliver the poles on the cars. Respondent had advanced considerable sums of money to them and was, of course, interested in getting the poles to market. At the time of those conferences, he was not the owner of the poles. Indeed, the testimony clearly shows that, after the conferences upon which the respondent claims the contract between himself and appellant rests, Rogers Brothers were expected to and did obtain cars for the loading of the poles. Any other conclusion than that the modified contract was on behalf of Rogers Brothers would require us to hold that the respondent had agreed to accept the poles in the woods, and there is nothing to justify that conclusion; for, since payment was to be made to Rogers Brothers when the logs were delivered, if the new contract provided they were to be delivered

to the respondent in the woods, then the latter at that time might become indebted to Rogers Brothers for the balance of the purchase price, a result which the parties did not contemplate. If respondent has been damaged it is because of the failure of Rogers Brothers to live up to their contract with him, and his right of recovery would be against them; and if they were unable to perform their contract because of the fault of the appellant, then their right of action would be against it. In brief, we hold the testimony showed conclusively that the contract made by the appellant in July and September (if one was made) was for Rogers Brothers and that the respondent acted merely on their behalf in that regard.

This conclusion disposes of the case. The court should have taken the case from the jury. The judgment is reversed and the cause dismissed.